In re Joseph Orlando BELTRAN, Marta Julia Beltran, Debtors.

WELLS FARGO BANK, a National Association, Appellant,

v.

Joseph Orlando BELTRAN, Marta Julia Beltran, Appellees.

BAP No. NC–94–1373–ROJ.
Bankruptcy No. 93–33634 WTC.
Adv. No. 93–3523 DM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 23, 1995.

Decided May 16, 1995.

Einat Meisel, Concord, CA, for appellant.

Richard M. Travis, Pleasant Hill, CA, for appellees.

Before RUSSELL, OLLASON and JONES, Bankruptcy Judges.

*OPINION*

RUSSELL, Bankruptcy Judge:

A creditor bank filed a complaint against the debtors pursuant to § 523(a)(2)(A)[1], seeking to have the debtors' credit card debt to the bank determined to be nondischargeable. The debtors did not respond to the creditor's complaint, and the clerk of the bankruptcy court entered the debtors' default.

The creditor filed a motion for entry of a default judgment. Following a default prove up hearing, the bankruptcy court denied the motion and entered judgment in favor of the debtors. The creditor timely filed a notice of appeal. We AFFIRM.

## I. FACTS

One of the debtors/appellees, Marta Julia Beltran ("Mrs. Beltran"), applied for and obtained a credit card with an $8,100 credit limit (the "account") from the appellant Wells Fargo Bank, a National Association (the "Bank") in December 1989. In October 1992, Mrs. Beltran had available credit of $7,877 on the account.

From October 1992 through February 1993, Mrs. Beltran made purchases and obtained cash advances on the account. As of February 1993, no further credit was available on the account, and Mrs. Beltran made no further purchases or cash advances. She made timely payments on the account from November 1992 through March 1993. The Bank closed the account in June 1993.

From January to August 1993, Mrs. Beltran's husband, Joseph Orlando Beltran ("Mr. Beltran") was unemployed and on disability as a result of a job-related injury. (Mr. Beltran is also a debtor/appellee). The Beltrans filed a *pro se* joint chapter 7 petition on August 11, 1993. On their bankruptcy schedules, they listed the Bank as an unsecured creditor owed $7,987.79.

The Bank timely filed a complaint under § 523(a)(2)(A) to determine the dischargeability of the debt and for entry of a money judgment against both of the Beltrans. The bankruptcy court clerk issued a summons and notice of status conference, which the Bank served on the Beltrans. The Beltrans did not respond to the complaint and did not appear at the status conference.

Following the status conference, the Bank filed its request for entry of default and a declaration in support of the request. The bankruptcy court clerk duly filed an entry of default and related notice. The bankruptcy court then scheduled a default prove up hearing.

The Bank served the Beltrans with a copy of the notice of the default prove up hearing. In addition, it served subpoenas on each of the Beltrans to compel their attendance at the hearing. Mr. and Mrs. Beltran both appeared at the hearing in response to the subpoenas.

At the hearing, the Bank's counsel conducted a direct examination of a credit officer of the Bank concerning the account activity, and Mr. Beltran cross-examined the credit officer. Counsel for the Bank then conducted a direct examination of Mr. Beltran as a witness for the Bank. At the conclusion of the hearing, the bankruptcy court denied the Bank's motion and entered judgment in favor of the Beltrans.

---

1. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101—1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001—9036.

## II. ISSUES

A. Whether the bankruptcy court abused its discretion in considering the testimony of one of the defaulting defendants at the default prove up hearing, in order to determine whether to deny the motion for entry of a default judgment.

B. Whether the bankruptcy court erred in determining the debt to be dischargeable under § 523(a)(2)(A).

C. Whether the bankruptcy court erred in entering judgment in favor of the defaulting defendants following denial of the motion for entry of a default judgment, without further proceedings in the bankruptcy case.

## III. STANDARD OF REVIEW

█ We review a bankruptcy court's denial of a motion for entry of a default judgment under Fed.R.Civ.P. 55 for abuse of discretion. *In re Villegas*, 132 B.R. 742, 744 (9th Cir. BAP 1991); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir.1986).

█ We review a bankruptcy court's findings of fact, whether based on oral or documentary evidence, for clear error, and give due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Fed.R.Bankr.P. 8013. A bankruptcy court's finding regarding a debtor's intent to repay a credit card obligation is a question of fact which is similarly subject to the clearly erroneous standard. *In re Eashai*, 167 B.R. 181, 183 (9th Cir. BAP 1994).

## IV. DISCUSSION

A. *Consideration of the debtor's testimony at the default prove up hearing*

The Bank argues that in a default situation, the facts presented by a plaintiff are presumed to be true unless disproved by contrary evidence, and that a defaulting defendant is rendered silent with regard to the presentation of any contrary evidence.

Default judgments are governed by Fed.R.Civ.P. 55, which is made applicable to bankruptcy proceedings by Rule 7055. Fed.R.Civ.P. 55 provides, in pertinent part, as follows:

## Rule 55. Default

**(a) Entry.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

**(b) Judgment.** Judgment by default may be entered as follows:

(1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.

(2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor.... If the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages *or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper* and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

Fed.R.Civ.P. 55 (emphasis added).

█ Entry of a default by the bankruptcy court clerk does not automatically entitle a plaintiff to entry of a default judgment, regardless of the fact that generally the effect of entry of a default is to deem allegations admitted. *Villegas*, 132 B.R. at 746. Courts have wide discretion in deciding whether or not to enter a default judgment under Fed.R.Civ.P. 55, and the Rule itself authorizes the bankruptcy court to conduct such hearings "as it deems necessary and proper."

Bankruptcy courts are accordingly provided the discretion to require proof of the facts necessary to determine a valid claim for relief against the defaulting parties. *Id.* at 746. A bankruptcy court's consideration of the evidence required to establish the "truth of any averment" under Fed.R.Civ.P. 55 necessarily includes evidence regarding issues of intent in a § 523(a)(2)(A) context.

In *Villegas,* the plaintiff filed a complaint under § 727 in an effort to deny the debtors' discharge. The plaintiff subpoenaed the debtors, Mr. and Mrs. Villegas, to compel their attendance at a hearing on the complaint. The plaintiff relied upon the debtors' testimony in its unsuccessful effort to establish its case against them. The panel in *Villegas* concluded that the bankruptcy court's conduct of an evidentiary hearing under Fed.R.Civ.P. 55, which included testimony by the debtors, did not constitute an abuse of discretion. The panel affirmed the bankruptcy court's refusal to enter a default judgment in favor of the plaintiff. *Id.* at 746.

■ In this case, we are presented with a similar factual situation regarding the testimony of Mr. Beltran, one of the defaulting debtors. The Bank subpoenaed the Beltrans, conducted a direct examination of Mr. Beltran as the Bank's own witness, and relied upon his testimony in its unsuccessful effort to establish its case. Given the *Villegas* panel's conclusion that consideration of a defaulting debtor's testimony is appropriate at a default prove up hearing, and given the fact that the Bank in this case subpoenaed the Beltrans and called Mr. Beltran to testify as the Bank's own witness, the Bank cannot now be heard to argue that the Beltrans' default rendered them "silent" concerning the presentation of evidence contrary to the Bank's allegations. We conclude that the bankruptcy court properly considered Mr. Beltran's testimony at the default prove up hearing.

B. *Finding of dischargeability of credit card debt under § 523(a)(2)(A)*

Section 523(a)(2)(A) provides, in pertinent part, that "[a] discharge under section 727, ... does not discharge an individual debtor from any debt—.... (2) for money, property,

services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2)(A).

The leading case in the Ninth Circuit regarding the dischargeability of credit card debt is *In re Dougherty,* 84 B.R. 653 (9th Cir. BAP 1988). In *Dougherty,* the panel concluded that the creditor must sustain its burden of proof by clear and convincing evidence that the debtor intended to incur the debt without repaying it. *Id.* at 657. The standard for the burden of proof in such cases has subsequently been clarified to be the preponderance of the evidence standard. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

The *Dougherty* panel cited with approval the following list of non-exclusive factors to determine a debtor's intent with respect to payment:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges are made;

6. Whether the charges were above the credit limit of the account;

7. Whether the debtor made multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. Financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

84 B.R. at 657 (citing *In re Faulk,* 69 B.R. 743, 757 (Bankr.N.D.Ind.1986)).

The Bank argues that Mr. Beltran's testimony confirmed the allegations in the complaint as being true in all respects, and that ample evidence existed for the bankruptcy

court to enter a default judgment in favor of the Bank. The Bank's complaint alleged that the credit card was issued to both Mr. and Mrs. Beltran. It also alleged that at the time the Beltrans made the purchases and obtained the cash advances on the account, they had neither the ability nor the intent to repay the Bank. The Bank's argument on appeal defies credibility in light of the facts presented to the bankruptcy court, which are contained in the transcript of the default prove up hearing.

According to the transcript, the Bank's credit officer testified upon cross-examination by Mr. Beltran that the account was in Mrs. Beltran's name only. The credit officer acknowledged that from the opening of the account until February 1993, purchases and payments were made in a timely manner, and that the account was maintained in a current status. Upon direct examination by the Bank's counsel, the credit officer had earlier testified that Mr. Beltran had had an 18 year employment history with Pacific Gas & Electric.

Mr. Beltran testified, upon direct examination by the Bank's counsel as the Bank's witness, that he was on disability from January through August of 1993. He testified that up until the time of the bankruptcy filing, he was meeting the Beltrans' obligations for rent, food and basic necessities, and making minimum payments on credit card debts. He stated that he made none of the charges on the account.

At the conclusion of the default prove up hearing, the bankruptcy court made the following oral findings of fact: (a) Mr. Beltran was not and had never been an account holder on the account; (b) the Beltrans were current on all of their payments at all of the times the charges were made on the account, and there was no indication of any lack of intent on their part to make the payments at the time the charges were incurred; and (c) Mr. Beltran experienced a disability, as a result of which the payments stopped and the bankruptcy filing followed several months later.

■ The Bank further argues that Mr. Beltran has an independent liability for his wife's debt under California law based on "benefit conferred" and "community liability" theories. The so-called "benefit conferred" theory was not raised in the proceedings below. We therefore need not consider this argument on appeal, as it is not properly before us. *See Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir.1985).

■ The Bank's "community liability" argument with respect to the imposition of independent liability on Mr. Beltran is incorrect. The community property of the estate would be liable for Mrs. Beltran's debt, if it were determined to be nondischargeable. *In re Soderling,* 998 F.2d 730, 734 (9th Cir. 1993). However, there is no basis for imposing independent liability on Mr. Beltran for a nondischargeable debt of his spouse, if such a debt in fact existed. *See generally In re Maready,* 122 B.R. 378, 381–82 (9th Cir. BAP 1991); § 524(a)(3).

■ The bankruptcy court correctly explained the inaccuracy of the "community liability" theory to the Bank's counsel at the default prove up hearing. The Bank's counsel not only acknowledged the accuracy of the court's explanation, but also asked that the case against Mr. Beltran be dismissed:

THE COURT: All right. You may step down, Mr. Beltran.

What's the theory by which you even name Mr. Beltran as a defendant in this action, Ms. Lucas? He's not on the account.

MS. LUCAS: No, under community property law in California, he is responsible.

THE COURT: Under community property, community property is answerable to the debt. The spouse is not liable for the debt.

MS. LUCAS: That's correct, Your Honor.

THE COURT: So there is no basis whatsoever for your case against Joseph Beltran.

MS. LUCAS: No, I would dismiss that. I would ask that the case be—

THE COURT: No, I'll dismiss it—

MS. LUCAS: —dismissed.

THE COURT: —as absolutely inappropriate. It's shocking. I mean the theory by which you justify the case, it's just misdi-

rected. And I am—I assumed when I looked at the file that I would see Mr. Beltran's name on the account, but—and there's no showing. The only showing that the evidence reflects is that these people were current on all their payments at all the times they made all the charges. There is absolutely no indication that they had no intention to make the payments at the time these charges were incurred.

There is clear evidence from the cross-examination, that Mr. Beltran experienced a disability, which is why payments stopped being made, and the bankruptcy followed several months later.

So Wells Fargo has not proven a case and I'll enter judgment for the defendants.

■ It is clear to us from the record of the bankruptcy court proceedings that Mr. Beltran was not an account holder, and that he was therefore improperly named as a defendant and had no liability on the account. The record adequately explains the facts and circumstances surrounding the Beltrans' bankruptcy filing, and evidences that the Beltrans were current on all of their account payments at the times the charges were incurred. Such evidence negates any allegations that the Beltrans had no intent to repay the Bank. Finally, the record contains the concessions of the Bank's counsel that the "community liability" theory is legally incorrect, and that the case against Mr. Beltran should have been dismissed.

We conclude that the findings of the bankruptcy court are not clearly erroneous. Based upon the evidence before it, the bankruptcy court correctly found that the Bank failed to present sufficient evidence against Mrs. Beltran, or any evidence whatsoever against Mr. Beltran, to prove a case against either of them under § 523(a)(2)(A).

C. *Entry of judgment in favor of defaulting defendants following denial of the Bank's motion for entry of a default judgment, without further proceedings in the bankruptcy case*

■ Following denial of a motion for entry of a default judgment, a plaintiff would ordinarily be afforded the opportunity to conduct discovery and proceed to trial in an effort to prove its case. This would be particularly true where a plaintiff was unprepared at the default prove up hearing to present any evidence (e.g., because it assumed its allegations would be deemed admitted without the need for presentation of any evidence at the hearing), or where a plaintiff requested additional time to conduct discovery and/or requested a trial on the merits. *See Villegas*, 132 B.R. at 746–48 (holding that matter must be remanded for further discovery and trial in bankruptcy court following denial of motion for default judgment, where bankruptcy court had previously taken motion for default judgment under submission on condition that if it ruled against plaintiff on the default motion, plaintiff would be granted time to rebut, conduct discovery or amend complaint).

■ In this case, the Bank presented the testimony of its credit officer and subpoenaed and examined Mr. Beltran in its effort to prove its case. The Bank did not request additional time to conduct discovery or to amend its complaint, and did not request a trial on the merits. The Bank did not argue, either in the proceedings below or on appeal, that the entry of a judgment discharging the debt was procedurally improper. Further, at the oral argument on appeal, the Bank acknowledged that it had no further evidence to present in support of its case and no expectation of discovering any additional evidence.

It is therefore clear, from the record of the proceedings below and from the oral argument on appeal, that the Bank presented all of the evidence which it had against the Beltrans, and that its evidence was insufficient to prove a case under § 523(a)(2)(A) against either of them. The bankruptcy court's entry of an order discharging the debt following denial of the motion for entry of the default judgment, without any further proceedings in the bankruptcy case, was therefore the logical and proper course of action under the facts of this case.

## V. CONCLUSION

■ The bankruptcy court did not abuse its discretion in considering Mr. Beltran's

testimony at the default prove up hearing. The bankruptcy court's finding that the credit card debt was dischargeable was not clearly erroneous, and its entry of judgment in favor of the Beltrans was appropriate.[2] Accordingly, we AFFIRM.

**2.** The Beltrans have requested an award of fees and double costs for a meritless appeal. They have presented a strong argument for such an award with respect to Mr. Beltran. However, we note that the Beltrans were not represented by counsel in the proceedings below. Their lack of representation by counsel is presumably the reason why the bankruptcy court, despite its strong opinion that the Bank's case against Mr. Beltran lacked any merit, did not impose sanctions against the Bank in those proceedings.

Moreover, calculation of the portion of attorneys' fees and costs on appeal which concern only Mr. Beltran would appear to be difficult, and we expect that the amount would be *de minimis*. Therefore, under the facts of this case, the Beltrans' request for an award of fees and double costs on appeal is ORDERED DENIED.