**Electronically Filed
Supreme Court
SCWC-12-0000867
23-OCT-2014
09:15 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

KONDAUR CAPITAL CORPORATION,
Petitioner/Plaintiff-Appellee,

vs.

LEIGH MATSUYOSHI,
Respondent/Defendant-Appellant.

SCWC-12-0000867

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000867; CIV. NO. 12-1-0185)

October 23, 2014

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

Kondaur Capital Corporation (Kondaur) seeks review of

the Intermediate Court of Appeals' (ICA) Judgment on Appeal,

filed April 4, 2014, which vacated the Circuit Court of the

Fifth Circuit's (circuit court) order granting Kondaur's motion

for summary judgment, and remanded the case to the circuit court

for further proceedings. We conclude that the ICA erred in relying upon a post-judgment motion as a basis to find disputed facts with regard to a motion for summary judgment. We therefore vacate the ICA's Judgment on Appeal, and remand the case to the ICA for a review of the other issues raised by the parties that were not considered by the ICA in its resolution of the appeal in this case.

## I. Background

### A.

This action arose out of a property title dispute between Leigh Matsuyoshi, who purchased the property in Līhu'e, Kaua'i (Property) in June of 2007 and Kondaur, which later acquired a quitclaim deed to the Property following a judicial foreclosure.

Matsuyoshi bought the Property using a home loan she obtained from Resmae Mortgage Corporation. The Mortgage included an acceleration clause, which provided Matsuyoshi would be given at least 30 days to cure a default of payment. The notary section of the Mortgage states that Matsuyoshi personally appeared before a notary public of the State of Hawai'i, on March 26, 2007, in the City and County of Honolulu.

Six weeks prior to Matsuyoshi buying the property, RMC Mortgage Holdings LLC[1] filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court of the District of Delaware (Bankruptcy Court). On June 5, 2007, the Bankruptcy Court issued an Order confirming the second amended plan of reorganization (Bankruptcy Order). The Bankruptcy Order affirmed that the "Reorganized ResMAE" could continue to exist "as a corporation [and] may operate its business and may use, acquire, and dispose of property . . . without supervision or approval of the Bankruptcy Court." The Bankruptcy Order further affirmed that all transfers of the property to the reorganized Resmae Mortgage Corporation were "legal, valid, and effective," and "shall vest Reorganized ResMAE" with "good title to such property, free and clear of all Claims, liens, charges other encumbrances, and interest[.]"

In May 2008, an attorney representing Resmae Liquidation Properties (Resmae) sent Matsuyoshi a Notice of Intent to Foreclose stating Matsuyoshi's loan was in default and that failure to pay the amount due by June 20, 2008 would result in the loan being accelerated and the Property being referred for foreclosure action. Subsequently, in October 2008,

---

[1] Although it is unclear from the record, it appears RMC Mortgage Holdings LLC was the same company as Resmae Mortgage Corporation prior to its reorganization in Bankruptcy Court.

Matuyoshi received personal service of a Notice of Mortgagee's Non-Judicial Foreclosure Under Power of Sale stating that Resmae Liquidation Services would sell the Property at an auction held in Honolulu on November 13, 2008.

The sale proceeded as scheduled in Honolulu, and the Mortgagee's Affidavit of Foreclosure Under Power of Sale (Affidavit of Sale) was certified by Resmae's attorney and recorded on November 17, 2008. The Affidavit of Sale stated that Resmae was the highest bidder at the sale for the purchase price of $416,900.20. The Affidavit of Sale further stated that the default remained uncured at the time of sale.

On January 14, 2009, Resmae executed a quitclaim deed conveying the Property to itself (Resmae's quitclaim deed), and Resmae subsequently recorded the deed on January 22, 2009. Resmae then sought possession of the property from Matsuyoshi through an action for ejectment in the circuit court filed on February 3, 2009. On October 15, 2009, the action for ejectment was dismissed pursuant to "Rule 12(Q)" and no final judgment was entered in the record.

On July 14, 2010, Resmae conveyed the Property to Kondaur by a quitclaim deed (Quitclaim Deed).[2] Kondaur did not

---

[2] The Quitclaim Deed was signed by a vice president and executive vice president for Resmae. However, the limited power of attorney attached to the Quitclaim Deed only granted the power to a third executive, and the

(continued . . .)

record its Quitclaim Deed until February 24, 2011, and in the period of time between executing and recording the Quitclaim Deed, on January 14, 2011, Resmae filed an action for ejectment against Matsuyoshi in the United States District Court for the District of Hawai'i, which was later dismissed by stipulation of the parties on February 12, 2011. Following the February 24, 2011 recording, Kondaur gave Matsuyoshi notice to vacate. After Matsuyoshi refused to leave, Kondaur filed the underlying action in this case in the circuit court.

**B.**

Kondaur's complaint (Complaint), filed on June 5, 2012, against Matsuyoshi, requested a judgment for immediate and exclusive possession of the Property and a writ of possession. The Complaint stated that Kondaur had "acquired title and current ownership of the Property through a Quitclaim Deed recorded on February 24, 2011." The Complaint was served on Matsuyoshi on June 9, 2012.

On June 27, 2012, Kondaur filed a Motion for Summary Judgment Against All Defendants on Complaint filed June 5, 2012 (MSJ). Kondaur requested that the circuit court grant the MSJ and enter a judgment for possession of the Property for Kondaur

---

(continued . . .)
notary section stated that this third executive (whose signature does not appear on the Quitclaim Deed) executed the Quitclaim Deed.

and against Matsuyoshi, issue a writ of possession, enter the judgment as final, and set a time and date for a trial on damages.  The MSJ was supported by a declaration of Ann Pham, who stated that she was an asset manager for Kondaur and a custodian of Kondaur's records.  Pham declared that according to regular business records maintained by Kondaur, Kondaur owned the Property pursuant to its Quitclaim Deed, a true and accurate copy of which was attached to the MSJ.  Pham also declared that Kondaur had given Matsuyoshi notice to vacate, and Matsuyoshi "has so far continued to reside at the Property and has otherwise failed or refused to leave."  Attached to the MSJ were Exhibits A to G.[3]

---

[3]     Exhibit A was a certified copy of the Quitclaim Deed.

Exhibit B was a certified copy of Resmae's quitclaim deed.

Exhibit C was a certified copy of the Affidavit of Sale.  Exhibit C also included a copy of the deed from Jun Matsuyoshi et al., to Matsuyoshi; the Note; the Mortgage; the Assignment of Mortgage and Note from Resmae Mortgage Corporation to Resmae Liquidation Properties; the notice of default; the Notice of Sale; a list of parties who received the Notice of Sale by certified mail, return receipt requested and by personal service; the returns and acknowledgments of service from those parties listed; an Affidavit of Posting of the Notice of Sale on the Property; an Affidavit of Publication of the Notice of Sale in the Honolulu Star-Bulletin; and a report from the Department of Defense Manpower Data Center stating that Matsuyoshi was not an active duty member of the military.

Exhibit D was the Bankruptcy Order.  The Bankruptcy Order contained a number of exhibits, including the reorganization plan; a Notice of Assumption and Rejection of Executory Contracts and Unexpired Leases; a Notice of Entry of Confirmation Order; the Notice of (1) Occurrence of Effective Date of Plan and (2) Administrative Claims Bar Date; and a budget for "ResMAE Mortgage Corporation" for the period through June 15, 2007.

(continued . . .)

In its memorandum in support of the MSJ, Kondaur asserted it had undisputed title to the Property and Matsuyoshi was residing on the property as a trespasser. Kondaur argued that the Quitclaim Deed was prima facie evidence of Resmae's conveyance of the property to Kondaur, and thus Kondaur contended it was the owner of the Property and was entitled to immediate and exclusive possession.

Kondaur maintained any challenge to its title was meritless because the Bankruptcy Order "sets forth that the property of Resmae, as a debtor-in-possession, was conveyed to the Liquidating Trust[.]" Kondaur argued the Bankruptcy Order "sets forth a Permanent Injunction that bars any claims against the Property that is based on factual allegations arising prior to June 15, 2007." Kondaur also contended the Affidavit of Sale was evidence that the power of sale was duly executed. Kondaur maintained the foreclosure sale extinguished Matsuyoshi's

(continued . . .)
Exhibit E included the Order and "Order and Findings and Recommendation" from the United States District Court for the Eastern District of California case of Pantalion v. Resmae Mortgage Corporation, dismissing that case, in part due to an injunction issued by the Bankruptcy Court.

Exhibit F was a second copy of the Notice of (1) Occurrence of Effective Date of Plan and (2) Administrative Claims Bar Date.

Exhibit G was the Final Decree and Order Approving Motion of the Liquidating Trust of Resmae Mortgage Corporation, by and through Alan M. Jacobs, its Bankruptcy Court Appointed Liquidating Trustee, for Entry of Final Decree and Related Relief.

interest in the property, and "Resmae subsequently conveyed the Property to Kondaur by virtue of the Quitclaim Deed dated July 14, 2010."

Kondaur argued further that any challenges to the foreclosure or subsequent transfers of the case should have been brought in the Bankruptcy Court. Kondaur maintained that because Matsuyoshi failed to cure her default in payments prior to the sale, "she is without standing to contest the validity of the foreclosure conducted by Resmae and the superior title to the Property subsequently acquired by Kondaur." Kondaur concluded Matsuyoshi had no interest in the Property, she was required to vacate the Property immediately, and the court should issue a judgment for possession and writ of ejectment.

On July 6, 2012, Kondaur requested an entry of default against Matsuyoshi pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 55(a) "for her failure to answer or otherwise respond to [Kondaur's] Complaint." On the same day, an entry of default against Matsuyoshi was filed in the circuit court by the clerk of the court pursuant to HRCP Rule 55(a).

On July 26, 2012, at the first hearing scheduled for the MSJ, Matsuyoshi requested a continuance to seek legal counsel. Kondaur argued that Matsuyoshi was in fact represented by counsel until May or June of 2012. Matsuyoshi responded that

she "had an attorney up until last week" but that he "informed [her] last week that he was not able to take the case."

Kondaur also argued that Matsuyoshi could not oppose the MSJ until she moved to set aside the default against her. Kondaur requested that the court rule on the MSJ that day. The court considered Kondaur's argument as an objection to the request for continuance. The court continued the hearing over Kondaur's objection in order to give Matsuyoshi time to seek counsel.

On August 16, 2012, Matsuyoshi filed, through counsel, her opposition to the MSJ, which was supported by a memorandum, declaration of counsel, and Exhibits 1-4 (Opposition).[4] Matsuyoshi acknowledged that she "fell behind on her mortgage payments." Concerning the transfer from Resmae to Kondaur, Matsuyoshi stated that the executives who signed the Quitclaim Deed on behalf of Resmae were not authorized to execute the instrument. Matsuyoshi noted that the limited power of attorney attached to the Quitclaim Deed designated an executive who did not in fact sign the Quitclaim Deed. Matsuyoshi noted that

---

[4]     Exhibit 1 was a printout of a screenshot of the Hoʻohiki Document List for an ejectment case filed by Resmae against Matsuyoshi in circuit court. Exhibit 2 was a copy of the complaint from that case. Exhibit 3 was the Stipulation for Dismissal from the ejectment action filed by Resmae in federal court. Exhibit 4 was a printout of a screen shot of the document history of that case. Counsel declared Exhibits 1-4 to be true and correct copies.

Resmae filed another ejectment action in federal district court, which was dismissed. Matsuyoshi argued that she did not answer the Complaint out of confusion due to the prior two actions filed against her.

Matsuyoshi maintained that technical violations of the foreclosure statutes also voided the foreclosure sale. Matsuyoshi argued HRS § 667-5 required "that all notices and acts required by the power contained in the mortgage shall be complied with." She maintained that Resmae's foreclosure against her was void for several reasons related to the adequacy of the notice.

Additionally, Matsuyoshi contended that "only the person who actually conducted the foreclosure can make [an] affidavit" of foreclosure, and it was "unclear [from the affidavit of Resmae's attorney] whether it was [their attorney] or 'her' designated representative [that] held the foreclosure." Matsuyoshi noted that Kondaur stood in privity of contract with Resmae based on the alleged Quitclaim Deed from Resmae to Kondaur. Matsuyoshi further argued that Resmae's assignment of rights to Kondaur was invalid because the Quitclaim Deed only attached a limited power of attorney for an executive who did not in fact sign the deed. Thus, Matsuyoshi concluded that the Resmae foreclosure was void and the individuals who conveyed title to Kondaur did not have authority to do so.

10

Matsuyoshi contended further that "[a]s to the Entry of Default of Defendant in [the instant case], because of the confusion that arose by the multiplicity of lawsuits regarding the very same issues, it is within the authority of this Honorable Court to *sua sponte* set aside such default," or to dismiss the instant case with prejudice.  Matsuyoshi "request[ed] that Plaintiff stipulate [to] the setting aside of the default" or in the alternative "that this Honorable Court grant a continuance so that Defendant may file a Motion to Set Aside the Default."

On August 20, 2012, Kondaur filed its reply.  Kondaur argued that Matsuyoshi presented no admissible evidence showing that there was a genuine issue for trial.  Kondaur contended that Matsuyoshi's "failure . . . to establish by admissible evidence that the Note and Mortgage were not in default at the time of the non-judicial foreclosure is dispositive."  Kondaur maintained that Matsuyoshi presented no admissible evidence showing that she did not receive notice of her default under the terms of the Mortgage.

Kondaur additionally responded that Matsuyoshi's claim that the Quitclaim Deed was not properly executed by the executive possessing the power of attorney was based on inadmissible evidence because Matsuyoshi "has not established how she has personal knowledge . . . on the policy and

procedures, or the internal business operations of Resmae or Kondaur." Kondaur argued further that because Matsuyoshi "was not a party to the assignment of mortgage she has no standing to contest the validity of the document." Kondaur contended that Matsuyoshi remained in default and therefore was "procedurally barred from defending this Motion and the underlying case," and that the default should not be set aside because "she has no meritorious defense to the action."

On August 23, 2012, the circuit court heard oral argument at the hearing on the MSJ. Matsuyoshi argued that res judicata and collateral estoppel barred Kondaur's ejectment action, and there was a discussion between Matsuyoshi and the court concerning these issues and the documents that Matsuyoshi had submitted as part of her Opposition.

Matsuyoshi further asserted that the foreclosure sale violated HRS Chapter 667 because it was carried out on O'ahu while the Property was on Kaua'i. There was then a discussion regarding the location of the foreclosure sale that derived entirely from documents submitted by Kondaur with its MSJ. Kondaur replied that in 2008 "there was no prohibition in . . . Chapter 667 [] that prohibited a lender from doing a foreclosure sale [for a property located on Kaua'i] on the island of Oahu." Kondaur also contended that the question of whether Matsuyoshi could bid was an "immaterial fact because the borrower cannot

12

challenge a nonjudicial foreclosure after the deed has recorded," and Matsuyoshi admitted to default under the Mortgage and the loan documents.

At the conclusion of the hearing, the circuit court indicated that it had reviewed the documents submitted by counsel and was inclined to grant Kondaur's MSJ and requested Kondaur's counsel to prepare the order.

On September 18, 2012, the circuit court entered its "Order Granting [Kondaur's] [MSJ]" (MSJ Order). The circuit court also issued its "Judgment on Order Granting [Kondaur's] [MSJ]" (MSJ Judgment), providing that "summary judgment is hereby entered in favor of [Kondaur]." On September 20, 2012, the circuit court issued a writ of possession.

On October 17, 2012, Matsuyoshi filed a "Motion to Set Aside Entry of Default" pursuant to HRCP Rule 55(c), a "Motion to Set Aside [MSJ Judgment]" pursuant to HRCP Rule 60(b)(1), (3), and (6), and a "Motion to Stay [MSJ Judgment]" (collectively Post-Judgment Motions).

Matsuyoshi also filed the Declaration of Leigh Matsuyoshi (Matsuyoshi Declaration) in which she declared, inter alia, that she was "absolutely positive that the [Mortgage] was not signed by [her] before a notary public." In her Motion to Set Aside Entry of Default, Matsuyoshi contended the Matsuyoshi Declaration presented a meritorious defense regarding the

13

invalidity of the Mortgage. Matsuyoshi also noted her failure to file an answer in the instant case was not willful and she did file an Opposition.

On October 18, 2012, Matsuyoshi filed a Notice of Appeal from the MSJ Judgment.

Kondaur filed an opposition to the Post-Judgment Motions on November 1, 2012. The circuit court's minutes of November 8, 2012, reflect that the court determined that "since the matter [was] currently pending appeal, [it did] not have jurisdiction over the motion to set aside default," and it was "not inclined to give an inclination to the appellate courts" on the Motion to Set Aside [MSJ Judgment].

On November 14, 2012 the circuit court entered an order denying Matsuyoshi's motions to set aside the entry of default and the MSJ Judgment (Post-Judgment Order). The Post-Judgment Order also granted Matsuyoshi's motion to stay the MSJ Judgment. Matsuyoshi did not appeal from the Post-Judgment Order.

## II. Appellate Proceedings

On April 3, 2013, Matsuyoshi filed her opening brief and raised two points of error:

> 1. Whether the circuit court erred in granting Kondaur's MSJ;
>
> 2. Whether the circuit court erred in denying Matsuyoshi's Motion to Set Aside Judgment on Order Granting Motion for Summary Judgment.

14

Matsuyoshi argued that Resmae did not meet its strict duty of good faith and diligence in the judicial sale of the Property. Consistent with these requirements, she asserted, the mortgagee has a duty "to obtain for the property as large a price as possible." Matsuyoshi contended "[t]he sale of property located on Kauai at the front entrance to the First Circuit Courthouse did not show reasonable diligence and good faith in an endeavor to obtain the best possible prices consistent with such diligence and good faith."

Matsuyoshi maintained "[t]here was a discrepancy in the Affidavit of Sale in that the affiant is a man but it refers in two places to acts done by 'her.'" Thus, Matsuyoshi concluded a strict interpretation of "technical violations of foreclosure proceedings would void the sale on this basis."

As for her HRCP Rule 60(b) motion, Matsuyoshi argued that if the circuit court had "expressed [an] inclination to grant" the motion, she could have requested that the ICA remand the case to the circuit court. Matsuyoshi concluded HRCP Rule 60(b)(6) "is applicable as the summary judgment should never have been granted due to the sale of the property on Oahu and also because the notarization on the mortgage was false." Matsuyoshi thus requested that the ICA reverse the MSJ Order and vacate the MSJ Judgment.

On June 11, 2013, Kondaur filed its answering brief. Kondaur maintained that because "Matsuyoshi never set aside the default that was entered against her," she was "barred" from challenging Kondaur's MSJ or defending the Complaint.

Kondaur contended further that the circuit court properly granted Kondaur's MSJ because Kondaur presented undisputed evidence that it had title to the Property, and Matsuyoshi was residing there unlawfully and without permission. Kondaur argued that Pham's declaration, along with the certified copy of the Quitclaim Deed and the statements contained therein, which were admissible as recitals in a document affecting an interest in property, were sufficient to establish the essential elements of Kondaur's action for ejectment. Kondaur asserted that Matsuyoshi presented no admissible evidence in her Opposition to rebut the evidence provided by Kondaur.

Additionally, Kondaur maintained that the circuit court properly rejected Matsuyoshi's argument that the foreclosure sale of the Property was void. Matsuyoshi's contention that the foreclosure sale was void because it occurred on O'ahu must fail, Kondaur argued, because at the time of the sale, Hawaii's non-judicial foreclosure statute did not prohibit the sale of the Property on O'ahu. Kondaur maintained that conducting the auction on O'ahu was reasonable because O'ahu was a larger market, and Matsuyoshi failed to establish that she

16

was prejudiced by the occurrence of the foreclosure sale on

O'ahu.

Next, Kondaur maintained that Matsuyoshi's Post-Judgment Motions were untimely because they were filed after the ten-day tolling period set forth in Rule 59.  Thus, Kondaur maintained the Post-Judgment Order was a final appealable order, and because Matsuyoshi failed to appeal it within thirty days, the ICA did not have jurisdiction to consider Matsuyoshi's challenge.  Further, Kondaur contended that even if the ICA reached the merits of Matsuyoshi's Post-Judgment Motions, Matsuyoshi failed to "provide any justification for her failure to present the evidence" at the hearing on Kondaur's MSJ.  Lastly, Kondaur argued that Matsuyoshi did not "cite any authority to establish how her allegations that a notary failed to properly certify her signature on the subject mortgage would probably change the outcome of the hearing granting [Kondaur's MSJ]."

On June 25, 2013, Matsuyoshi filed her reply brief.  Matsuyoshi maintained that regardless of the effect of the entry of default, "the MSJ should not have been granted because the material facts did not show that Kondaur was entitled to judgment as a matter of law."  Matsuyoshi argued she was not bound by the recitations in the Quitclaim Deed because she was not a party to the conveyance, and the Quitclaim Deed

"establishes only that Kondaur obtained whatever interest, if any," that Resmae had in the property[.]"

Matsuyoshi contended the Bankruptcy Order does not apply to her because the defective foreclosure sale occurred after the Bankruptcy Order was filed. Matsuyoshi argued the Bankruptcy Court did not retain jurisdiction over the foreclosure sale after the Bankruptcy case closed.

Concerning the sale on Oʻahu, Matsuyoshi maintained that merely following the statute was not sufficient and the sale on Oʻahu was unreasonable. Matsuyoshi argued that she did not need to prove she was prejudiced by the sale on Oʻahu and asserted that this would be impossible to prove without a comparable sale occurring on Kauaʻi.

On March 7, 2014, the ICA issued its Memorandum Opinion. Initially, the ICA held that it lacked jurisdiction to review the Post-Judgment Order as a timely appeal had not been taken from it.

The ICA next concluded that in order for Kondaur to prove entitlement to the remedy of ejectment, it would have to prove "ownership and title" to the Property. The ICA held that, although no default judgment had been filed, "[e]ntry of default against Matsuyoshi meant she admitted factual allegations in Kondaur['s] complaint." The ICA held that "after entry of default by the lower court, on appeal, the defendant is entitled

to contest the sufficiency of the complaint and its allegations to support the judgment." (Quoting Danning v. Lavine, 572 F.2d 1386, 1388 (9th. Cir. 1978) (internal quotation marks omitted).

The ICA found that "[t]he circuit court did not enter default judgment against Matsuyoshi," but rather, the ICA noted, the circuit court entered "an entry of default as to the allegations in Kondaur['s] complaint." This distinction, explained the ICA, "allow[ed] the conclusion that entry of default against Matsuyoshi did not establish that the circuit court found that Kondaur [] had proven, as opposed to pled, their prima facie case for ejectment." Thus, the ICA held that it could consider whether the factual allegations in the Complaint were "well-pled."

The ICA held that facts that are not "well-pled" included those "which are contrary to uncontroverted material in the file of the case." (Quoting In re McGee, 359 B.R. 764, 773 (B.A.P. 9th Cir. 2006). The ICA found that among other uncontroverted evidence in the "file of the case" was the Matsuyoshi Declaration, which was not submitted in support of the MSJ, but rather, was submitted with Matsuyoshi's Post-Judgment Motions. The ICA found that the allegations in Matsuyoshi's Declaration were material to the issue of whether Kondaur acquired good title to the property through its Quitclaim Deed. The ICA concluded that summary judgment for

19

Kondaur was inappropriate because a mortgage not signed before a notary public is invalid, and Matsuyoshi's Declaration alleged material facts that raised genuine issues as to the validity of the Mortgage. The ICA, thereafter, declined "to reach further issues raised by the parties."[5]

Accordingly, the ICA vacated the MSJ Judgment and remanded the case for proceedings consistent with its Memorandum Opinion.

### III. Application for Writ of Certiorari

Kondaur presents the following two questions in its application:

I. Whether the ICA erred by reversing the Circuit Court's decision to grant summary judgment in favor of Petitioner based on evidence that was not a matter of record at the time the Circuit Court considered the motion.

II. Whether on *de novo* review this Court should affirm the Circuit Court's judgment granting a summary judgment in favor of Petitioner.

Kondaur argues that the ICA erred in reversing the circuit court's granting of the MSJ based on Matsuyoshi's post-judgment declaration, which "was not a matter of record at the time the Circuit Court considered the [MSJ] motion." Kondaur contends

---

[5] The ICA also held that the Bankruptcy Order did not prevent Matsuyoshi from challenging the legitimacy of the Mortgage because Matsuyoshi's argument that the Mortgage was not signed before a notary public was a defense to Kondaur's MSJ and not an affirmative claim against Resmae Mortgage Corporation or Resmae Liquidating Properties.

that the ICA was "limited to those materials that were considered by the trial court in ruling on the motion." Kondaur maintains that "the ICA relied solely on the Respondent's Post-Judgment Declaration," which was filed twenty-nine days after summary judgment was entered in its favor. Kondaur contends that "the admissible evidence on file at the time of the motion confirms there was no genuine issue of material fact" concerning its title to the property and the right to its possession. Kondaur argues that "[n]either opposition filed by [Matsuyoshi] included any admissible evidence to create a genuine issue of material fact as to [Kondaur's] title to and right to possession of the property." Thus, Kondaur concludes it was entitled to judgment as a matter of law[6] and requests that this court reverse the ICA's opinion and judgment and affirm the circuit court's judgment granting summary judgment in its favor.

On May 30, 2014, Matsuyoshi filed her response. Matsuyoshi argues that the ICA's "analysis appears to be that

---

[6] Kondaur maintains that this court should "reject the argument presented by [Matsuyoshi] that the foreclosure sale was defective because it was conducted on the island of Oahu, in a separate county from where the Subject Property was located." Kondaur argues that "[p]ursuant to HRS §§ 667-5 through 667-10 [(2008)] and the power of sale clause set forth in the Mortgage, the foreclosing mortgagee was allowed to conduct the public auction held on November 17, 2008 in the City and County of Honolulu, despite the mortgaged property being located in Kauai county." Additionally, because Matsuyoshi failed to present any admissible evidence of her ability to bid at auction, it was not shown that she was prejudiced by the sale occurring on O'ahu instead of Kaua'i.

the MSJ was essentially a motion for default judgment." As such, Matsuyoshi contends that it was permissible for the ICA to consider the Matsuyoshi Declaration filed in support of her motion to set aside because "when there is an entry of default on appeal the defendant is entitled to contest the sufficiency of the complaint and its allegations to support the judgment." Matsuyoshi maintains that any uncontroverted material in the "file of the case" could be considered by the ICA in determining the sufficiency of the Complaint. Matsuyoshi concludes that the ICA correctly applied the appropriate standard of review for default judgments.[7]

On June 6, 2014, Kondaur filed its reply. Kondaur argues that "[t]he entry of default against [Matsuyoshi] has no legal bearing on whether the materials before the Circuit Court

---

[7]    Matsuyoshi also contends that Kondaur is bound by an earlier dismissal of an ejectment action filed against Matsuyoshi by Kondaur's predecessor in interest, Resmae. Matsuyoshi "acknowledges that this argument was not made to the Circuit Court or the ICA," however, Matsuyoshi claims it is relevant to show that the ICA did not commit a grievous error and that the correct result was reached. Kondaur maintains that Matsuyoshi's argument concerning the prior ejectment actions involving the Property was waived because Matsuyoshi did not raise it in the ICA. Kondaur maintains further that this argument is contradicted by the record as the dismissals were without prejudice.

Matsuyoshi also "urges the court to adopt a [] standard of strictest good faith and utmost diligence in situations such as the case at bar where the mortgagee is also the purchaser." Matsuyoshi contends that "[t]he sale of property located on Kauai at the front entrance to the First Circuit Courthouse did not show reasonable diligence and good faith . . . . ." Matsuyoshi argues further that she was not required to show that she was prejudiced by the sale on O'ahu and that showing such prejudice would be impossible without conducting an actual auction of the property on Kaua'i.

in ruling on [Kondaur's] MSJ were sufficient to support summary judgment against [Matsuyoshi]." Kondaur contends Matsuyoshi implicitly recognized that the ICA erred when saying that it "appear[ed]" the ICA interpreted the MSJ as a motion for default judgment. Kondaur notes that it never moved for default judgment.

## IV. Discussion

### A.

The record in this case reflects that the parties and the circuit court treated the MSJ as a motion for summary judgment irrespective of an entry of default. Thus, on appeal to the ICA, Matsuyoshi did not address the entry of default. Rather, Matsuyoshi's opening brief focused solely on the circuit court's MSJ Order.

Matsuyoshi's first point of error was whether the circuit court erred in granting Kondaur's MSJ. In her second point of error, Matsuyoshi asserted that the circuit court erred in denying her Motion to Set Aside MSJ Judgment. In support of both her first and second points of error, Matsuyoshi argued that (1) Kondaur did not have title to the property because the foreclosure sale was void for not having been conducted where the property was located, and (2) the foreclosure sale was also void for "technical violations."

23

In fact, neither party addressed default judgment in their appellate briefs to the ICA because no motion for default judgment was filed in the circuit court or ruled on by the judge. Additionally, neither party contended that the claims in the Complaint were deemed admitted by the circuit court as a result of a default having been entered by the clerk of the court. This is because the circuit court did not consider, much less find, the allegations in the Complaint to be admitted; instead, the court and the parties proceeded to address the merits of the MSJ, with Matsuyoshi fully participating in the MSJ proceeding, including filing an Opposition, appearing at the hearing, and presenting arguments to the court.

Further, the MSJ was filed before a default had been requested or entered. Kondaur attached numerous documents to the MSJ, including a certified copy of the Quitclaim Deed, a certified copy of Resmae's quitclaim deed, and a certified copy of the Affidavit of Sale. At the initial hearing on the MSJ, the circuit court refused to proceed upon the basis of the clerk-entered default and granted Matsuyoshi a continuance to seek counsel. Subsequent to the hearing, Matsuyoshi retained counsel and filed her Opposition. Matsuyoshi's Opposition included documents related to Resmae's prior ejectment actions against Kondaur and a declaration supporting those documents.

At the continued MSJ hearing, the circuit court relied on evidence submitted by Kondaur in its MSJ and considered documents submitted by Matsuyoshi in her Opposition. The circuit court stated that it had reviewed the written submissions. The court had a lengthy discussion with Matsuyoshi concerning res judicata and collateral estoppel that centered on the documents that Matsuyoshi had submitted as part of her Opposition.

The court also considered Matsuyoshi's argument that the foreclosure sale was void because it had occurred on O'ahu while the Property was on Kaua'i. The extensive discussion of the foreclosure was based solely on the documents submitted by Kondaur with its MSJ. Additionally, the MSJ Judgment issued by the court stated explicitly that "summary judgment is hereby entered in favor of [Kondaur]." At no point did the circuit court indicate that it was deeming all the allegations in the Complaint to be true as a consequence of Matsuyoshi's default.

It cannot be disputed that the circuit court proceeded upon the MSJ as a motion for summary judgment, held a hearing in which it reviewed the evidence and arguments from both parties with respect to the motion, issued an order granting the MSJ, and filed a judgment affirming that "summary judgment is hereby granted in favor of" Kondaur. On appeal to the ICA, neither party contested this unequivocal state of the record.

**B.**

"When reviewing a summary judgment, an appellate court's consideration of the record is limited to those materials that were considered by the trial court in ruling on the motion."  Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 108, 58 P.3d 608, 619 (2002); see also Munoz v. Yuen, 66 Haw. 603, 606, 670 P.2d 825, 827 (1983) ("Thus, in reviewing a summary judgment, this court will not examine evidentiary documents . . . not specifically called to the attention of the trial court, even though they may be on file in the case." (emphasis added)).

Although it was uncontroverted that the circuit court considered and ruled upon the MSJ and did not rule upon a motion for a default judgment that had not been made, the ICA determined that it was empowered to review the sufficiency of the Complaint and to consider additional evidence not considered by the circuit court in ruling on the MSJ.  The entry of default, which was not challenged at the appellate level, was pivotal to the ICA's analysis in reaching this determination. According to the ICA, the entry of default against "Matsuyoshi meant she admitted factual allegations in Kondaur['s] complaint."  However, as stated, the circuit court never indicated that it was proceeding upon the premise that the factual allegations in the Complaint had been admitted.

26

Next, the ICA concluded that "after entry of default by the lower court, on appeal, the defendant is entitled to contest the sufficiency of the complaint and its allegations to support the judgment." (Quoting Danning, 572 F.2d at 1388) (internal quotation marks omitted). The ICA cited Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978), and Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977), for this proposition. Danning, however, involved an appeal from a default judgment, 572 F.2d at 1388, and, neither Danning nor Geddes involved a motion for summary judgment against the defaulting defendants, id.; Geddes, 559 F.2d at 559-60.[8]

The ICA also relied on In Re Beltran, 182 B.R. 820, 823 (B.A.P. 9th Cir. 1995), In Re McGee, 359 B.R. at 773, and upon 10A Charles A. Wright & Arthur R. Miller, et al., Federal Practice and Procedure § 2688 (3d ed. 1998), for the proposition that entry of default by the court clerk does not automatically entitle a plaintiff to entry of default judgment, but rather, a

---

[8]    While Geddes involved a motion for summary judgment, it was not against the defaulting defendants. In Geddes, the trial court granted plaintiffs' summary judgment against a group of corporations, but the plaintiffs were also seeking a judgment against the individuals who allegedly controlled the corporations. 559 F.2d at 559. The individuals had defaulted, but the circuit court entered monetary judgments in accordance with the defaults against the individuals that were not equivalent to the award of damages against the corporations. One of the plaintiffs appealed, arguing that the individuals' defaults meant they admitted they were jointly and separately liable for the damages, as alleged in the complaint. The Ninth Circuit rejected this argument, holding that the individual defendants' defaults "established their respective liabilities, but not the extent of the damages to the plaintiff class." Id. at 560.

27

court may require some proof of the facts that must be established in order to determine liability. However, all of these sources refer to a trial court's consideration of a default judgment, not a motion for summary judgment. See McGee, 359 B.R. at 773 (bankruptcy court has broad discretion to grant a default judgment and court did not abuse its discretion in refusing to enter default judgment when material facts were not established); Beltran, 182 B.R. at 823 ("Entry of a default by the bankruptcy court clerk does not automatically entitle a plaintiff to entry of a default judgment, regardless of the fact that generally the effect of entry of a default is to deem allegations admitted."); 10A Wright & Miller, Federal Practice and Procedure § 2688 n.8 ("The trial court considering whether to enter a default judgment may hold a hearing to establish the truth of any averment in the complaint only if it has informed plaintiff of the intention to do so in advance so that plaintiff can understand the direction of the proceeding and marshall evidence.").

In this case, the ICA acknowledged that the circuit court did not enter default judgment. Nonetheless, the ICA, relying again on McGee, held that "[c]onsequent to entry of default against Matsuyoshi, all well-pled factual allegations were deemed admitted," and "[f]acts that are not well pled include allegations that are . . . contrary to uncontroverted

material in the file of the case." (Quoting In re McGee, 359 at 773. Thus, despite the fact that no motion for default judgment had been made, no default judgment had been entered, no claims in the Complaint had been construed by the circuit court as being admitted, and the case had proceeded upon the basis of a motion for summary judgment that was fully litigated and decided, the ICA concluded that once default was entered the appellate court was empowered to review the allegations in the Complaint to determine if they were "well pled." Moreover, in considering whether they were "well pled," the ICA determined that it could review the Matsuyoshi Declaration from the Post-Judgment Motions because it was "in the file of the case," and based upon the Matsuyoshi Declaration, a disputed fact could be found.

The ICA did not address the fact that the Matsuyoshi Declaration was indisputably not part of the record reviewed by the circuit court before it issued its MSJ Judgment, as the MSJ Judgment was filed on September 18, 2012, and the Matsuyoshi Declaration was not filed until October 17, 2012. Further, the ICA's analysis has the effect of circumventing the restriction that "[w]hen reviewing a summary judgment, an appellate court's consideration of the record is limited to those materials that were considered by the trial court in ruling on the motion." Ass'n of Apartment Owners of Wailea Elua, 100 Hawai'i at 108, 58

P.3d at 619. Here, not only was the Matsuyoshi Declaration not called to the attention of the circuit court at the time the MSJ was decided, it could not have been, as it was not filed until nearly a month after the MSJ Judgment was entered.

In essence, the ICA treated the MSJ as a motion for default judgment. Matsuyoshi acknowledges this in her response, in which she states the following: "The ICA's analysis appears to be that the MSJ was essentially a motion for default judgment." While the ICA never characterized the MSJ as a motion for default judgment, this would appear to be the import of the ICA's ruling.[9]

Allowing the rule established by the ICA to become precedent would place a defaulting, non-prevailing party with regard to a motion for a summary judgment in a better position as compared to a party who had not defaulted. In the default situation, the appellate court would be required to examine the entire record to determine the sufficiency of the allegations in the complaint. Additionally, the defaulting party could

___

[9] The circuit court appeared to have implicitly set aside the entry of default by continuing the MSJ hearing to allow Matsuyoshi to seek counsel, allowing Matsuyoshi to file her Opposition, and allowing her to appear and present argument at the hearing. See HRCP Rule 55(c) ("For good cause shown the court may set aside an entry of default."); Diaz v. United States, 789 F. Supp. 2d 722, 732 n.11 (S.D. Miss. 2011) ("[T]he court may set aside the entry of default sua sponte, provided of course that the court finds good cause to do so."). However, it is not necessary to resolve this issue in light of the fact that the circuit court clearly considered and decided the MSJ on its merits.

retroactively prevail upon a correctly granted MSJ order or judgment by a subsequent submission of a declaration.  Further, allowing appellate courts to review evidence submitted after summary judgment has been granted would overturn well-settled Hawaiʻi law.

Therefore, the ICA erred in relying on the post-judgment Matsuyoshi Declaration as a basis to find disputed material facts as to the MSJ and consequently to further conclude that "summary judgment for Kondaur [] [was] inappropriate."  Accordingly, we vacate the ICA's Judgment on Appeal and remand the case to the ICA to consider the further issues that it "decline[d] to reach" that were "raised by the parties" on appeal.

## V.  Conclusion

The ICA's April 4, 2014 Judgment on Appeal is vacated, and the case is remanded to the ICA for consideration of the other issues raised by the parties that were not addressed by the ICA in its resolution of the appeal in this case.

Michael C. Bird and
Thomas J. Berger
for petitioner

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

Joe P. Moss
for respondent

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

