**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000831
17-APR-2024
08:02 AM
Dkt. 147 MO**

NO. CAAP-17-0000831

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

TITLE GUARANTY ESCROW SERVICES, INC., Plaintiff-Appellee/
Cross-Appellee v. MILILANI TOWN ASSOCIATION, Defendant/Cross-
Claim Plaintiff/Cross-Claim Defendant-Appellee/Cross-Appellant,
and SVMM INVESTMENTS LLC, Defendant/Cross-Claim Defendant/
Cross-Claim Plaintiff-Appellee/Cross-Appellee, and
ALVIN K. ISAACS, as Successor Personal Representative of the
Estate of Pauline Isaacs-Lean, Defendant/Cross-Claim Defendant-
Appellant/Cross-Appellee, and FIRST HAWAIIAN BANK,
Defendant/Cross-Claim Defendant-Appellee/Cross-Appellee, and
DOE PERSONS AND ENTITIES 1-10, Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 15-1-1750)

MEMORANDUM OPINION
(By: Wadsworth, Presiding Judge, McCullen, J., and
Circuit Court Judge Nakamoto, in place of
Leonard, Acting Chief Judge, Hiraoka and Nakasone, JJ., recused)

Defendant/Cross-Claim Defendant-Appellant/Cross-

Appellee Alvin K. Isaacs, as Successor Personal Representative

of the Estate of Pauline Isaacs-Lean (**Estate**)[1] and Defendant/Cross-Claim Plaintiff/Cross-Claim Defendant-Appellee/Cross-Appellant Mililani Town Association (**Association**) appeal from the Circuit Court of the First Circuit's October 20, 2017 Final Judgment granting Defendant/Cross-Claim Defendant/Cross-Claim Plaintiff-Appellee/Cross-Appellee SVMM Investments LLC's (**SVMM**) Motion for Summary Judgment and Order to Disburse Interpleaded Funds.[2]

## I.    Background

Briefly, Pauline Isaacs-Lean (**Isaacs-Lean**), according to Estate, was 81 years old and suffering from dementia.  Based on her failure to pay $418 in maintenance fees, Association foreclosed on Isaacs-Lean's home (**Property**), which was secured by a mortgage with First Hawaiian Bank.

Association's Public Notice of Public Sale stated the sale was "subject to" any prior liens.  In March 2015, SVMM purchased the Property for $240,100.00 during the non-judicial foreclosure sale, where Association and non-party Chun Mei Tong

---

[1]  On April 2, 2018, Alvin K. Isaacs was substituted as Successor Personal Representative of the Estate of Pauline Isaacs-Lean in place of Hilton Lui, Personal Representative.

[2]  The Honorable Keith K. Hiraoka presided.  The Honorable Karen T. Nakasone presided over the original interpleader action until the case was transferred and reassigned to Judge Hiraoka on April 10, 2017.

The Honorable Edwin C. Nacino presided over Association's petition to serve Isaacs-Lean notice of foreclosure by publication, see infra Footnote 6.  The Honorable Gary W.B. Chang presided over the land court proceeding to set aside title, see infra Footnote 5.

(**Tong**) also bid on the Property. The 2015 tax assessed value for the property was $675,200.00.

On April 27, 2015, Association recorded its quitclaim deed to SVMM in the land court. That same day, the land court issued a "State of Hawaii Certificate of Title Certificate No. 1096435" (**Certificate**).

Title Guaranty Escrow Services (**Title Guaranty**) disbursed a portion of the sale proceeds to pay Association and the costs of the foreclosure. However, a conflict arose as to the disbursement of the remaining proceeds, with SVMM instructing Title Guaranty to pay First Hawaiian Bank and Association instructing Title Guaranty to pay Isaacs-Lean.

In September 2015, Title Guaranty filed the complaint at issue here to determine the distribution of the surplus sale proceeds. Title Guaranty deposited the contested funds with the circuit court, and was dismissed from the case.

Isaacs-Lean passed away in July 2016.

In March 2017, SVMM moved for summary judgment, positing that there was "no material question of fact that: (a) [Association] conducted a lawful and valid non-judicial foreclosure of the Property; and (b) under [Hawai'i Revised Statutes (**HRS**)] § 667-100(b) [(2016)], the Surplus Funds must first be allocated to satisfy and discharge the [First Hawaiian Bank] mortgage, a valid senior lien."

3

The circuit court granted summary judgment. The circuit court ordered First Hawaiian Bank be paid from the surplus funds to satisfy Isaacs-Lean's debt, and Estate be paid the balance.[3]

## II. Discussion

On appeal, Estate and Association raise numerous points of error challenging the circuit court's granting of SVMM's motion for summary judgment and the distribution of the sale proceeds.[4] In its answering briefs, SVMM, among other

---

[3] First Hawaiian Bank released any claims on the Property after the circuit court ordered the funds distributed, and filed no briefs in this appeal.

[4] Estate contends the circuit court erred in granting SVMM's motion for summary judgment where:

(1) Association did not personally serve Isaacs-Lean with notice of default and intention to foreclose;

(2) notice was served by publication;

(3) the non-judicial foreclosure sale price was inadequate because the sale price was below the tax assessed value of the home;

(4) the circuit court should have continued the hearing on SVMM's motion for summary judgment until after the land court ruled on a request to set aside the Certificate in favor of SVMM and to restore title to Isaacs-Lean's Estate;

(5) Isaacs-Lean's Estate should have been permitted to challenge the non-judicial foreclosure despite the Certificate because she was not given notice of the Certificate; and

(6) First Hawaiian Bank as the senior mortgagee should not have been paid from the sale proceeds where the Public Notice of Public Sale provided that the sale was "subject to" all prior liens and encumbrances.

(continued . . .)

things, challenges this court's jurisdiction, asserting Association lacks standing and the statutory construction question raised is moot. SVMM also raises preclusion and the issuance of the Certificate as defenses.

We have jurisdiction over this case, and hold that the circuit court erred in granting SVMM's motion for summary judgment.

## A.   Subject Matter Jurisdiction

We first address SVMM's challenge to this court's jurisdiction based on standing and mootness. In its answer to Association's opening brief, SVMM argues Association is not an aggrieved party and, thus, lacks standing to appeal.

> Generally, the requirements of standing to appeal are:
> (1) the person must first have been a party to the action;
> (2) the person seeking modification of the order or judgment must have had standing to oppose it in the trial court; and (3) <u>such person must be aggrieved by the ruling, i.e., the person must be one who is affected or prejudiced by the appealable order.</u>

---

(. . . continued)

Association raises five points of error, all concerning the distribution of the sale proceeds, which it argues should not have been used to pay First Hawaiian Bank's lien against the Property. Association contends the circuit court erred in:

(1)  disregarding the "subject to" language;

(2)  discounting the distribution of sale proceeds;

(3)  interpreting HRS § 667-100;

(4)  disparate treatment of the distribution of sale proceeds, citing to HRS §§ 667-100, -3, and -31; and

(5)  failing to treat the distribution of funds equitably.

Association's points of error are addressed collectively below at section II(C).

5

Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawaiʻi 251, 275-76, 151 P.3d 732, 756-57 (2007) (emphasis omitted and added) (quoting Kepoʻo v. Watson, 87 Hawaiʻi 91, 95, 952 P.2d 379, 383 (1998)).

SVMM is correct that Association recovered its delinquent assessments, fees, and costs in full by the proceeds of the sale. But, Association would be affected by the construction of HRS § 667-100, which governs its duties after a non-judicial sale. In any event, standing "is not an issue of subject matter jurisdiction[.]" Tax Found. of Hawaiʻi v. State, 144 Hawaiʻi 175, 188, 439 P.3d 127, 140 (2019).

SVMM also contends the "question of statutory construction raised in the Cross-Appeal is moot." SVMM argues the warranty deed, which transferred the Property from SVMM to non-party Henry Hoang, renders Association's appeal moot. However, like standing, "mootness is a prudential consideration and not an issue of subject matter jurisdiction[.]" State v. Hewitt, 153 Hawaiʻi 33, 41, 526 P.3d 558, 566 (2023).

Although the return of title and possession would not be possible if the property at issue was resold to an innocent third party purchaser for value, this court is not excused from addressing the merits of the case in light of the circuit court's equitable powers to fashion other appropriate remedies.

See Santiago v. Tanaka, 137 Hawai'i 137, 154 n.33, 366 P.3d 612, 629 n.33 (2016) (explaining "money damages . . . may be substituted for title and possession in certain instances pursuant to the equitable powers of a court in adjudicating a case arising from a mortgage foreclosure[.]").

Thus, contrary to SVMM's arguments, this court has jurisdiction over Association's appeal.

**B.     Summary Judgment**

Next, Estate challenges the circuit court's granting of SVMM's motion for summary judgment based on improper notice (first, second, and fifth points of error), inadequate price (third point of error), and failure to grant a continuance (fourth point of error).

As the movant for summary judgment, SVMM bore the burden of demonstrating there was no genuine issue of material fact. See generally, French v. Hawaii Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004). SVMM relied on the Certificate being conclusive, the judgment for possession being preclusive, and Association's Affidavit of Foreclosure Under Power of Sale (**Foreclosure Affidavit**) being prima facie evidence that the non-judicial foreclosure was lawfully conducted.

"We review a circuit court's grant or denial of summary judgment de novo under the same standard applied by the circuit court." Hawaii Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000) (cleaned up).

**1.    Certificate**

In its fifth point of error, Estate disputes the circuit court's determination that the Certificate was conclusive and unimpeachable evidence as to the validity of the foreclosure sale because Isaacs-Lean was not notified of the Certificate. In its answering brief, SVMM counters, "On April 27, 2015, the [Assistant Registrar of the] Land Court [of the State of Hawai'i] . . . issued Transfer Certificate of Title ('TCT') No. 1,096,435 to SVMM as the Property's new registered owner," and cites "Dkt. #23 at 323-324." (Emphasis omitted.)

A land court certificate of title is "conclusive and unimpeachable" evidence of title upon *entry* of the certificate of title. See HRS §§ 501-88, -118 (2006) ("After a new certificate of title has been entered, no judgment recovered on the mortgage note for any balance due thereon shall operate to open the foreclosure or affect the title to registered land."); Aames Funding Corp. v. Mores, 107 Hawai'i 95, 102-03, 110 P.3d 1042, 1049-50 (2005) (holding that a mortgagor's right to affect the title on registered land "must be raised 'prior to the entry of a new certificate of title.'") (quoting HRS § 501-118). "HRS

8

§ 501-118 specifies 'entry of a new certificate of title' as the determinative point when foreclosure proceedings may no longer be impeached," not *filing* of a quitclaim deed or *issuance* of a certificate number.  Wells Fargo Bank, N.A. v. Omiya, 142 Hawai'i 439, 449, 420 P.3d 370, 380 (2018).

The document to which SVMM refers does not expressly indicate "entry" into the land court registry and, thus, is not unimpeachable evidence of title.  See Omiya, 142 Hawai'i at 455, 420 P.3d at 386 ("[A]ssignment of a new TCT number does not demonstrate that a new certificate of title has been duly prepared and entered.").  To the extent it relied on the April 27, 2015 Certificate, the circuit court erred because SVMM failed to show there was no genuine issue as to whether a new certificate was "entered."[5]

## 2.    Judgment for Summary Possession

On May 27, 2015, SVMM filed a complaint for summary possession in the District Court of the First Circuit, attaching the April 27, 2015 Quitclaim Deed.  On June 24, 2015, the

---

[5]  We take judicial notice of the document list and minutes in Hilton Lui, PR v. SVMM Invs. LLC, et als., Case No. 1LD171002274, where Estate petitioned to set aside Certificate No. 1096435, and the land court denied SVMM's motion to dismiss "based upon genuine issues of material fact regarding the issuance of the TCT." (Formatting altered.)  See Hawai'i Rules of Evidence (**HRE**) Rule 201; State v. Akana, 68 Haw. 164, 165-66, 706 P.2d 1300, 1302 (1985) (discussing judicial notice of court's own records in related proceedings).

district court entered default against Isaacs-Lean, entered a judgment for possession, and issued a writ of possession.[6]

The circuit court concluded "Isaacs-Lean's failure to challenge SVMM's district court summary possession complaint or to appeal SVMM's judgment for possession precludes [Estate] from challenging *title* to the foreclosed property."  (Emphasis added.)

In its answering brief, SVMM argues Estate failed to challenge in its opening brief the circuit court's conclusion that SVMM's judgment for possession precluded Estate from challenging its *title* and, thus, Estate waived any such challenge.

But, we construe the Estate's challenge to the validity of the foreclosure sale as a challenge to more than SVMM's title.  In view of the applicable case law, Estate appears to seek relief from a wrongful foreclosure and the related distribution of sale proceeds, based in part on the contention that the sale price was inadequate.  See, e.g., In re Manuel, 152 Hawaiʻi 290, 302, 526 P.3d 267, 279 (2023) ("A complaint, filed after the entry of a new TCT and seeking the second remedy (money damages against a wrongfully foreclosing

---

[6] We also take judicial notice of the court minutes in SVMM Invs. LLC v. Wallace K. Lean et al., Case No. 1RC151004411. See HRE Rule 201; Akana, 68 Haw. at 165-66, 706 P.2d at 1302.

mortgagee), does not 'directly impeach' foreclosure proceedings because it does not challenge the matters contained within the new TCT (i.e., the identification of the owner of the property.)").

A challenge to the validity of a foreclosure sale is not limited to affecting title to the property, as the Hawaiʻi Supreme Court has made clear. See Santiago, 137 Hawaiʻi at 158, 366 P.3d at 633 (fashioning equitable relief where resale to a third party rendered voiding the foreclosure sale impracticable). Where title cannot be restored, the circuit court may provide other appropriate equitable relief. See generally, id.

Moreover, in light of the particular circumstances of this case, we do not view Estate's challenge to the validity of Association's non-judicial foreclosure sale as a claim that had to be raised in the summary possession action, particularly where the foreclosing party (i.e., Association) was not a party to that action.

Thus, contrary to SVMM's argument, Estate did not waive its challenge to the validity of the foreclosure sale and the related distribution of sale proceeds.

## 3.    Association's Non-judicial Foreclosure Sale

In its third point of error, Estate contends "the Circuit Court erred in granting . . . SVMM's motion for summary

11

judgment, because the price obtained at the non-judicial foreclosure sale . . . was inadequate." Estate also argues the circuit court "did not make the sale 'subject to' the prior lien" as stated in the terms and conditions of the sale. Estate concludes "[t]hese facts alone create genuine issues of material fact[.]"

In Kondaur, the Hawaiʻi Supreme Court reemphasized the protections outlined in Ulrich that safeguard fairness in non-judicial foreclosure sales. Kondaur Cap. Corp. v. Matsuyoshi, 136 Hawaiʻi 227, 240, 361 P.3d 454, 467 (2015); Ulrich v. Sec. Inv. Co., 35 Haw. 158, 168 (Haw. Terr. 1939). Non-judicial foreclosure sales in Hawaiʻi must be conducted "in a manner that is fair, reasonably diligent, and in good faith, and . . . demonstrate that an adequate price was procured for the property." Kondaur, 136 Hawaiʻi at 240, 361 P.3d at 467.

Even if we assume *arguendo* that SVMM met its initial burden for summary judgment, the burden would shift to Estate to show there was a genuine issue of material fact.[7] See French,

---

[7] We note that a bona fide purchaser for value would not "bear the burden of demonstrating that the nonjudicial foreclosure sale was conducted in a manner that was 'fair, reasonably diligent, and in good faith and that an adequate price was procured for the property.'" See Blue Mountain Homes, LLC v. Page, 153 Hawaiʻi 123, 526 P.3d 648, No. CAAP-18-0000927, 2023 WL 2607544 at *5 n.7 (App. Mar. 23, 2023) (SDO) (citation omitted).

But, for summary judgment, the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Kondaur, 136 Hawaiʻi at 240, 361 P.3d at 467 ("This burden may be discharged by demonstrating that if the case went to trial, there would be no competent evidence to support a judgment for his or her opponent") (cleaned up).

105 Hawai'i at 470, 99 P.3d at 1054 ("Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment") (quoting GECC Fin. Corp. v. Jaffarian, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App. 1995)) (emphasis omitted).

Estate argues that there was a genuine issue as to whether the foreclosure sale was conducted in a manner to procure an adequate price, relying on Kondaur's fairness obligations. 136 Hawai'i at 240, 361 P.3d at 467. Estate explained there was a loss in equity when considering the difference between the Property's 2015 tax assessed value of $675,200.00 and the non-judicial foreclosure sale price of $240,100.00. Estate points to the Public Notice of Public Sale, which stated that the sale was "subject to" any prior liens. Finally, Association provided Tong's affidavit, which stated Tong stopped bidding at $240,000.00 "because, based on the terms of sale and my understanding of foreclosure process, . . . I would have to pay the remaining balance on the mortgage."

When this evidence is taken together, Estate met its burden of showing a genuine issue existed as to whether Association's non-judicial foreclosure sale was conducted fairly in a manner procuring an adequate price. See generally, French, 105 Hawai'i at 470, 99 P.3d at 1054. Although HRS § 667-100 requires Association to distribute proceeds to "[a]ll other

liens and encumbrances in the order of priority as a matter of law," its Public Notice of Public Sale stated that the sale was "subject to" any prior liens.  See Hungate v. Law Off. of David B. Rosen, 139 Hawai'i 394, 409, 391 P.3d 1, 16 (2017) ("While final bids on foreclosed property need not equate to fair market values, the mortgagee nonetheless has a duty to use fair and reasonable means to conduct the foreclosure sale in a manner that is conducive to obtaining the best price under the circumstances."), abrogated on other grounds by State ex rel. Shikada v. Bristol-Myers Squibb Co., 152 Hawai'i 418, 526 P.3d 395 (2023).

Based on that notice, Tong stopped bidding at $240,000.00 as Tong understood the First Hawaiian Bank debt would be owed in addition to the final bid.  The final bid was $240,100.00, far below the tax assessed value of $675,200.00. See Omiya, 142 Hawai'i at 457, 420 P.3d at 388 (holding the difference between a tax assessed value of $281,100.00 and foreclosure sales price of $15,000.00 created a "genuine issue of material fact as to whether the [foreclosing entity] used reasonable means to obtain the best price for the Property."). And Association's Foreclosure Affidavit makes no averments discussing the adequacy of this sale price.

SVMM counters fairness was demonstrated through satisfaction of the statute and an auction price of $240,100.00, more than enough to cover Association's lien and the debt owed to First Hawaiian Bank. This, however, does not establish that there was no genuine issue as to whether the foreclosure sale was conducted in a manner "conducive to obtaining the best price under the circumstances," entitling SVMM to judgment as a matter of law. See Hungate, 139 Hawaiʻi at 409, 391 P.3d at 15.

Based on the evidence presented, the circuit court erred in granting SVMM's motion for summary judgment because the evidence showed there were genuine issues as to whether the foreclosure sale was conducted in a manner that was fair and whether the sale was conducted in a manner conducive to obtaining the best price.

### 4.    Notice and Continuance

In Estate's first, second, and fourth points of error, it challenges the service of the default notice and the circuit court's decision to not continue the hearing on SVMM's motion for summary judgment. Based on our review of the record, there was no error as to service of the default notice, and the circuit court did not abuse its discretion in denying the request to continue the hearing.

**C.    Construction of HRS § 667-100**

Finally, all of Association's points of error, and Estate's sixth point of error, challenge the circuit court's construction of HRS § 667-100 and the distribution of the foreclosure sale proceeds.

HRS § 667-100 provides as follows:

(a) After the purchaser completes the purchase by paying the full purchase price and the costs for the purchase, the unit shall be conveyed to the purchaser by a conveyance document.  The conveyance document shall be in a recordable form and shall be signed by the association in the association's name.  The unit owner shall not be required to sign the conveyance document.

(b) From the sale proceeds, after paying in the following order:

    (1) The association's attorney's fees and costs;
    (2) The fees and costs of the power of sale foreclosure;
    (3) The moneys owed to the association; and
    (4) All other liens and encumbrances in the order of priority as a matter of law,

    the balance of the sale proceeds shall be distributed by the association to junior creditors having valid liens on the unit in the order of their priority and not pro rata.  Any remaining surplus after payment in full of all valid lien creditors shall be distributed to the unit owner.

(c) Lien creditors prior to the association shall not be forced to their right of recovery.  However, the association and any prior lien creditor may agree in writing that the proceeds from the sale will be distributed by the association to the prior lien creditor towards the payment of moneys owed to the prior lien creditor before any moneys are paid to the association.

(Emphases added and formatting altered.)  We review the circuit court's construction of a statute de novo under the right/wrong standard.  Castro v. Melchor, 142 Hawaiʻi 1, 11, 414 P.3d 53, 63 (2018).

16

Simply put, subsection (b) of HRS § 667-100 unambiguously provides that the sale proceeds must be distributed in the following order:

(1) association's attorney's fees and costs;

(2) fees and costs of the power of sale foreclosure;

(3) money owed to the association;

(4) all other liens and encumbrances in order of priority;

(5) junior creditors having valid liens in order of priority; and

(6) unit owner.

If the non-judicial foreclosure of the Property is determined to be valid on remand (see *infra*), then based on the record in this case, First Hawaiian Bank fell under subsection (b)(4), "*all* other liens and encumbrances in order of priority." (Emphasis added.) As First Hawaiian Bank was not a junior creditor in this case, it did not fall under "junior creditors having valid liens," and it did not fall under any of the other categories because it was not the association or unit owner.

Moreover, nothing in subsection (c) permits Association, on its own accord, to deviate from distributing sale proceeds in the order set forth in subsection (b). And Association does not provide this court with a statute or rule that expressly exempts the sale proceeds from being distributed as set forth in HRS § 667-100.

17

Thus, the circuit court did not err in construing HRS § 667-100 as requiring distribution of the sale proceeds to First Hawaiian Bank before Estate, *if* the non-judicial foreclosure was valid.

A mortgage foreclosure is an equitable proceeding governed by the rules of equity. Santiago, 137 Hawaiʻi at 157, 366 P.3d at 632. And a valid non-judicial foreclosure is a necessary precondition to the disbursement of sale proceeds under HRS § 667-100. Where a non-judicial foreclosure has been conducted unlawfully, it would be inequitable to distribute improperly obtained sale proceeds under HRS § 667-100.

### III. Conclusion

For the foregoing reasons, we vacate the circuit court's October 20, 2017 Final Judgment granting SVMM's Motion for Summary Judgment and Order to Disburse Interpleaded Funds, and remand this case for further proceedings consistent with this memorandum opinion.

DATED:  Honolulu, Hawaiʻi, April 17, 2024.

On the briefs:

Gary Y. Okuda,
for Defendant/Cross-Claim
Defendant-Appellant/Cross-
Appellee Alvin K. Isaacs, as
Successor Personal
Representative of the Estate
of Pauline Isaacs-Lean.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Henry T. Nakamoto
Circuit Court Judge

Russell H. Ando,
Tiffany N. Dare,
for Defendant/Cross-Claim
Plaintiff/Cross-Claim
Defendant-Appellee/Cross-
Appellant Mililani Town
Association.

John Francis Perkin,
Van-Alan H. Shima,
Raymond C. Cho,
for Defendant/Cross-Claim
Defendant/Cross-Claim
Plaintiff-Appellee/Cross-
Appellee SVMM Investments
LLC.